**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,**
**WESTERN DIVISION**

ESTELLA MCKENZIE                                                     PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:07cv68-DCB-JMR

RONNIE COLLINS, in his individual
and official capacity, and
LETOURNEAU TECHNOLOGIES, INC.                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 48**]. Having carefully considered said Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. FACTS & PROCEDURAL HISTORY

Estella McKenzie, plaintiff herein, began her most recent period of employment as a welder with defendant LeTourneau Technologies, Inc. ("LeTourneau") in August 2002. Defendant Ronnie Collins began supervising the plaintiff in November 2004.

On March 18, 2005, the plaintiff was given a written warning by Collins because she had accumulated seventy-two unexcused work hours in a rolling twelve-month period. Over a year later on May 11, 2006, McKenzie notified Mike Gray, a vice-president at LeTourneau, that Collins had been sexually harassing her co-worker

Bobbie Vessel.[1]   This date was the first time that McKenzie reported any of Collins's allegedly sexually harassing behavior to LeTourneau.

On May 18, 2006, the plaintiff was issued a written warning by Collins for slow work production.   On May 22, 2006, Collins suspended McKenzie for two days purportedly because she had been absent from seventy-seven work hours in a rolling twelve-month period without excuse.

On August 30, 2006, the plaintiff was formally terminated by LeTourneau after she failed to report for work for more than three work days in a twelve-month period without advising LeTourneau of the reason for such absence.   The following day, McKenzie lodged a Charge of Discrimination against LeTourneau with the EEOC.   In her Charge, the plaintiff asserted that LeTourneau had subjected her to sexual discrimination and retaliation.   More specifically, McKenzie stated that as recently as April 30, 2006, she was the

---

[1] The parties dispute whether McKenzie also told Gray that she, too, had been the victim of sexual harassment by Collins.  The plaintiff asserts that she told Mike Gray that she was being harassed by Collins.  (McKenzie Depo. 138.)  LeTourneau contends that McKenzie only told Mike Gray about Collins's alleged harassment of Bobbie Vessel.  (Clay Masters Aff. ¶¶ 4, 7.)

The parties also disagree as to whether McKenzie was assigned to work on "spud cans" before or after May 11, 2006.  Spud can work is undesirable, at least in times of warm temperature, inasmuch as the spud cans are located outside.  According to the plaintiff, Collins sent her (and a co-employee) to work on the spud cans *before* she complained to Mike Gray.  (McKenzie Depo. 141.) However, Collins testified in his deposition that he assigned McKenzie to spud can duty *after* May 11, 2006.  (Collins Depo. 56.)

2

target of unwanted sexual advances from Collins, including his touching her during periods of instruction, his comments about her breasts and which size welding tips she preferred, and occasions on which he would stand outside the restroom door and look at his watch as she exited.  The plaintiff also claimed that she had been constructively discharged on August 23, 2006, when she was told not to return to work until she could present an original copy of a jury duty summons which had necessitated her absence from work. McKenzie received a right to sue letter from the EEOC on December 29, 2006.

On March 30, 2007, the plaintiff filed suit in this Court against Collins and LeTourneau.  In her Complaint [docket entry no. 1], McKenzie brings claims styled as follows: *quid pro quo* sexual harassment, sexually hostile work environment, retaliation, equal protection, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, supervision, and retention, and wrongful termination of employment.  (Compl. ¶¶ 22-48.)

Following a period of discovery, the defendants filed their Motion for Summary Judgment [docket entry no. 48] on April 14, 2008.  The plaintiff submitted a Response [docket entry no. 51] in opposition to the defendants' Motion, which the defendants countered with a Rebuttal [docket entry no. 53].  The defendants' Motion for Summary Judgment is now before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).[2]  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate."  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  But the nonmovant must "do more than simply show that there is some metaphysical doubt as

---

[2]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

### III. ANALYSIS

*A. The Plaintiff's Title VII Sex Discrimination Claims*

1. Timeliness of the Plaintiff's EEOC Charge

LeTourneau[3] contends that the plaintiff failed to file her EEOC Charge within 180 days of the sexual harassment she says she suffered at the hands of Collins and that her Title VII claims for

---

[3] The Court is aware that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 n.1 (5th Cir. 2003). Collins has not moved for summary judgment on the Title VII claims on this basis and the Court is not inclined to grant such relief on its own motion. Although Collins has joined LeTourneau's Motion for Summary Judgment on the Title VII claims, the Court will (except as otherwise noted) refer to LeTourneau only in its consideration of said Motion.

discrimination on the basis of sex are consequently time-barred.[4]
In support of their position, LeTourneau points to excerpts from
McKenzie's deposition where she declares (or at least suggests)
that certain alleged instances of harassment by Collins took place
before February 2006 and that she cannot be sure that any offensive
conduct occurred after February 2006. (McKenzie Depo. 112, 117-19,
136-37, 141, 153-54.)

The plaintiff responds by asserting that the continuing
violation doctrine allows her to rest her claims on the defendants'
discriminatory acts that occurred outside the 180-day period as
long as one harassing incident took place within the same.
McKenzie suggests that the act of harassment within the applicable
time frame is recounted in the part of her deposition testimony
where she states that Collins made comments about her breasts after
February 2006. (McKenzie Depo. 111.)

In their Rebuttal, LeTourneau argues that the plaintiff has
mischaracterized her deposition testimony.  While acknowledging
that McKenzie did say that Collins made comments about her breasts
after February 2006, (McKenzie Depo. 111), LeTourneau points out
that she later testified that said comments occurred before
February 2006 and that she could not be certain whether any of the
acts of harassment took place after February 2006. (McKenzie Depo.

---

[4] As noted *supra*, McKenzie filed her EEOC Charge on August 31,
2006.  In order for her Title VII claims not to be time-barred, an
act of discrimination must have occurred on or after March 4, 2006.

112, 141.)  LeTourneau also refers to the deposition testimony of McKenzie's daughter Tiffany Young who worked in the same location as her mother as a contract worker for a short period of time. According to Young, she overheard Collins's comments about her mother's breasts prior to October 2005.  (Young Depo. 15.)  This, says LeTourneau, is proof that Collins's comments about the plaintiff's breasts were made before March 4, 2006, and that no instance of sexual discrimination took place on or after that date.

"A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct.  This time limit operates as a statute of limitations."  Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999) (citations omitted).  The 180-day limitation period is an affirmative defense.  Wade v. Norfolk S. Corp., 121 F.3d 702 (table) (4th Cir. 1997) (per curiam) (not selected for publication); Wislocki-Goin v. Mears, 831 F.2d 1374, 1377 (7th Cir. 1987).

The Court is of the opinion that McKenzie's deposition testimony that Collins's comments about her breasts were made after February 2006 — — — although contradicted by her own testimony and that of her daughter — — — presents a fact question for the jury on whether said comments occurred on or after March 4, 2006.[5]  The

_____

[5] LeTourneau has raised no challenge to the applicability of the continuing violation doctrine.  Therefore, for the purposes of this Memorandum Opinion and Order, the Court will assume that the plaintiff may predicate LeTourneau's liability (at least as to her hostile work environment claim) on events that may have occurred

plaintiff's suspension, spud can assignment, and termination are all discrete instances of either *quid pro quo* sexual harassment or retaliation which clearly are alleged to have occurred within less than 180 days of the plaintiff's EEOC Charge.  For these reasons LeTourneau is not entitled to a judgment as a matter of law on the plaintiff's Title VII claims based upon its statute of limitations defense.

## 2. Exhaustion of Administrative Remedies

LeTourneau claims that the Court should not consider certain factual averments[6] made by McKenzie in her Complaint because she did not mention these allegations in her EEOC Charge and thus has failed to exhaust her administrative remedies as to claims which are founded on said statements.  The plaintiff argues that her EEOC Charge and Complaint contain the same factual allegations and points out that she made the statements about which LeTourneau protests in her deposition.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief.  Private sector employees must satisfy this requirement by filing an administrative charge with the EEOC."  McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273

---

outside the 180-day time frame if the finder of fact determines that the breast comments occurred on or after March 4, 2006.

[6] These allegations include: racial discrimination, sexual harassment by Roy Landers and John Janotta, sexually explicit graffiti on a bathroom wall, and comments by Collins about panties hung on a door knob.

(5th Cir. 2008) (citations omitted).  The United States Court of Appeals for the Fifth Circuit instructs district courts to "interpret[] what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"  Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).  Therefore, the Court will engage in a "'fact intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance."  McClain, 519 F.3d at 273.

"It is an obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein."  Sanchez, 431 F.2d at 462.  The Court finds that the factual underpinnings of the plaintiff's Title VII claims in her Complaint were explicitly mentioned or were reasonably derived from the allegations in her EEOC Charge.

However, in her EEOC Charge, McKenzie made no factual averments which would suggest that she had been subjected to racial discrimination by the defendants or that she had been sexually harassed by Landers and Janotta.  Furthermore, the plaintiff made no mention of sexually explicit graffiti on a bathroom wall or comments about panties hung on a door knob.

The Court is of the opinion that the circumstances surrounding the alleged racial discrimination by the defendants, sexual discrimination by Landers and Janotta, and bathroom wall graffiti (which McKenzie first mentioned in her deposition testimony) were not reasonable outgrowths of her EEOC Charge inasmuch as she neither reported any conduct by the defendants which could colorably be characterized as racially discriminatory, nor referred to Landers or Janotta explicitly or by implication, nor mentioned any general sexually offensive circumstances (like graffiti on the restroom wall) which did not involve Collins.  On the other hand, the panties on the door knob incident, though not reported in the EEOC Charge, was reasonably likely to come to light as a consequence of the plaintiff's Charge which was principally complaintive of Collins's behavior.  Therefore, the Court finds that the plaintiff has failed to exhaust her administrative remedies as to the former averments but not the latter one. Consequently, the Court will not consider the former allegations in the course of deciding the instant Motion and the plaintiff's Title VII claims will be circumscribed accordingly.

3. Quid Pro Quo Sexual Harassment

Title VII of the Civil Rights Act of 1964 mandates that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Sexual harassment is a form of employment discrimination prohibited by Title VII. Jones v. Flagship Int'l, 793 F.2d 714, 719 (5th Cir. 1986). In a Title VII sexual harassment action, the plaintiff ordinarily must prove "(1) [t]hat she belongs to [a] protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a 'term, condition or privilege of employment'; and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action." DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). However, "where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir. 2001) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662 (1998)).

In the matter *sub judice*, the Court finds that the plaintiff has sufficiently demonstrated that she was a member of a protected

class and was exposed to unwelcome sexual harassment[7] because of
her sex.  The first three elements of her sexual harassment claim
are therefore satisfied.

As to the fourth prong, a plaintiff can show that a term,
condition, or privilege of her employment was affected in one of
two ways: *quid pro quo* harassment or hostile work environment.
Pursuant to the "roadmap" for analyzing Title VII supervisor sexual
harassment cases described by the United States Court of Appeals
for the Fifth Circuit in <u>Casiano v. AT&T Corp.</u>, 213 F.3d 278, 283
(5th Cir. 2000), whether an employee suffered a tangible employment
action determines whether the Title VII sexual discrimination claim
is a *quid pro quo* harassment claim or a sexually hostile work
environment claim.  Only if an employee has been subjected to a
tangible employment action is her claim of the *quid pro quo*
variety; otherwise, the claim is classified as a one for hostile
work environment.  <u>Id.</u>

If the employee can prove that she was exposed to a tangible

---

[7] In her EEOC Charge, the plaintiff stated that the most
recent date on which she had been subject to Collins's sexual
advances was April 30, 2006.  In her deposition, the only testimony
which McKenzie gave which would support this allegation is her
statement (which she later contradicted elsewhere in her deposition
testimony) that Collins made comments about her breasts after
February 2006.  (McKenzie Depo. 111.)  Therefore, drawing all
reasonable inferences in favor of the plaintiff, the Court will
assume that these comments occurred on April 30, 2006.  The Court
is unable to discern from the record with any reasonable accuracy
(other than "prior to February 2006") when the other alleged acts
of harassment occurred and will not base its analysis upon them.

employment action, she must then demonstrate that said action
resulted from her acceptance or rejection of her supervisor's
purported misconduct.  Id.  If such a nexus is proven, then the
employer is vicariously liable per se (inasmuch as the employer is
conclusively presumed to have had notice of its supervisor's
wrongful conduct) and is precluded from utilizing the
Faragher/Ellerth affirmative defense.  Id.; Thompson v. Naphcare,
Inc., 117 Fed. Appx. 317, 322 (5th Cir. 2004) (per curiam) (not
selected for publication).

     Therefore, the critical issue (and the starting point on the
Casiano roadmap) is whether McKenzie experienced a tangible
employment action due to her acceptance or rejection of Collins's
advances.  The Supreme Court of the United States has defined a
tangible employment action as "a significant change in employment
status, such as hiring, firing, failing to promote, reassignment
with significantly different responsibilities, or a decision
causing a significant change in benefits." Burlington Indus., Inc.
v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d
633 (1998).  In most situations, a tangible employment action
inflicts direct economic harm.  Id. at 762, 118 S. Ct. at 2269.

     LeTourneau appears to concede (Defs.' Mem. 13) and the Court
will therefore assume that the suspension and termination of

13

McKenzie were tangible employment actions.[8, 9]

---

[8] Despite some suggestions to the contrary, the United States Court of Appeals for the Fifth Circuit apparently still applies the "ultimate employment decision" standard to Title VII *discrimination* claims. McCoy v. City of Shreveport, 492 F.3d 551, 560 (5th Cir. 2007); see also Thompson v. Naphcare, Inc., 117 Fed. Appx. 317, 323 (5th Cir. 2004) (unpublished opinion); but see Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002); Brown v. Rio Petroleum, Inc., 253 F.3d 702, 2001 WL 498518, at *3 (5th Cir. Apr. 12, 2001) (per curiam) (not selected for publication). "'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.'" Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997) (quoting Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)). The Fifth Circuit has not yet indicated what the relationship between an ultimate employment decision and the tangible employment action standard set forth in Ellerth is. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406-07 (5th Cir. 1999); Lopez v. Henderson, 190 F.3d 538, 1999 WL 642873, at *4 n.17 (5th Cir. July 27, 1999) (per curiam) (not selected for publication); Watts v. Kroger Co., 170 F.3d 505, 510 n.4 (5th Cir. 1999); Odum v. Beverly Enters. Mississippi, Inc., 165 F.3d 23, 1998 WL 870325, at *2 (5th Cir. Nov. 24, 1998) (not selected for publication).

The Court is of the opinion that a termination easily fits the explicit definitions of both an ultimate employment decision and a tangible employment action. Although the United States Court of Appeals for the Fifth Circuit has not addressed the issue, several of its sister circuits have recognized that a suspension is a tangible employment action. Byrd v. Illinois Dept. of Public Health, 423 F.3d 696, 709 (7th Cir. 2005); Jin v. Metro. Life Ins. Co., 310 F.3d 84, 100 (2d Cir. 2001). The Fifth Circuit has similarly not determined whether a suspension qualifies as an ultimate employment decision. Zaffuto v. City of Hammond, 308 F.3d 485, 493 (5th Cir. 2002) (declining to say whether a 30-day suspension is an ultimate employment decision). Because LeTourneau has conceded the issue, the Court need not decide whether a suspension qualifies as a tangible employment action or an ultimate employment decision.

[9] The plaintiff does not contend that her spud can assignment was a tangible employment action caused by her acceptance or rejection of Collins's advances; rather, the plaintiff contends such occurrence was due to the fact she reported Collins's sexual harassment on May 11, 2006. (Pl.'s Mem. 15.) Therefore, the plaintiff appears to confine this allegation to her retaliation claim.

The Court is of the opinion that the plaintiff has narrowly avoided summary judgment on the issue of whether her termination on August 30, 2006, resulted from her acceptance or rejection of Collins's sexual advances.   The Fifth Circuit has not yet found that temporal proximity alone can serve as proof of causation for quid pro quo claims, although it has recognized that two of its sister circuits have so held. Russell v. Univ. of Texas of Permian Basin, 234 Fed. Appx. 195, 202 (5th Cir. 2007) (per curiam) (not selected for publication) (citing Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1232 (11th Cir. 2006) and Farrell v. Planters Lifesavers Co., 206 F.3d 271, 285 (3d Cir. 2000)).  However, the Fifth Circuit has noted that a time lapse of up to four months has been found to satisfy the causation element of a prima facie case for *retaliation*. Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001); see also Richard v. Cingular Wireless LLC, 233 Fed. Appx. 334, 338 (5th Cir. 2007) (per curiam) (not selected for publication) (two and one-half month period sufficient); Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 995 (5th Cir. 2005) (less than sixty day period sufficient); Handzlik v. United States, 93 Fed. Appx. 15, 19 (5th Cir. 2004) (per curiam) (not selected for publication) (two months sufficient); but see Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 472 (5th Cir. 2002) (five month period insufficient).

Though it is an extremely close question, in light of the

circuits that have considered the precise issue and the Fifth Circuit's holdings in the retaliation context, the Court concludes that, standing alone, the four-month temporal separation of the comments and the plaintiff's termination could barely permit a reasonable jury to find that McKenzie's acceptance or rejection of the former caused the latter.

An easier case is presented by the plaintiff's May 22, 2006, suspension.  Assuming the breast comments were made on April 30, 2006, the two-day suspension approved by Collins would have occurred only three weeks later.  The Court finds that the temporal proximity of Collins's purported comments about McKenzie's breasts to the May 22, 2006, suspension is sufficient to create a genuine issue of material fact as to whether McKenzie's acceptance or rejection of his comments caused her suspension.  <u>Casiano</u>, 213 F.3d at 283.

LeTourneau argues that it possessed a legitimate reason for terminating McKenzie — — — excessive absenteeism.[10]  The plaintiff does not advance any specific argument to counter this explanation and to show pretext.  Giving the plaintiff the benefit of the doubt, the Court notes that elsewhere in her brief McKenzie states that she was told not to return to work until she produced a "non-

---

[10] The plaintiff was purportedly terminated by LeTourneau after she failed to report for work for more than three work days in a twelve-month period without advising LeTourneau of the reason for such absence.

required" signed jury duty excuse. (Pl.'s Mem. 15.) Because she could not produce the excuse in the form LeTourneau personnel desired, so the argument goes, she was terminated when she failed to report for work.

Certainly an employer's deviation from its written or unwritten policies and practices may raise an inference of pretext. See, e.g., Machinchick v. PB Power, Inc., 398 F.3d 345, 354-55 (5th Cir. 2005); Laxton v. Gap, Inc., 333 F.3d 572, 581 n.3 (5th Cir. 2003). In his deposition testimony, Clay Masters (LeTourneau's human resources manager) testified that LeTourneau Procedure number 1113.00-05, which is the procedure the company follows for paying an employee for time missed due to jury service, requires a signed confirmation of an employee's jury service. (Masters Depo. 27-29.) However, Masters also admitted that no company policy requires an employee to have a signed confirmation of his jury service in order to be excused for his jury duty absence, (Masters Depo. 23, 26, 29), although Masters did state that some proof of jury duty is needed in order to excuse an employee's absence. (Masters Depo. 23-24.) Masters did not indicate whether LeTourneau's procedures require that such proof be signed. The Court is of the opinion that, if proven, the fact that McKenzie was required to have a signed jury excuse before she could return to work when LeTourneau had no policy or procedure requiring the same could create an inference of pretext. Consequently, LeTourneau is not entitled to

a judgment as a matter of law on this *quid pro quo* claim.

LeTourneau also advances the legitimate, nondiscriminatory reason of excessive absenteeism (this time absence from seventy-seven work hours in a rolling twelve-month period without excuse) to account for McKenzie's suspension.  In response, the plaintiff points out that she was only issued a warning for a similar violation on March 18, 2005, and argues that this fact is indicative of pretext.  The Court agrees that the variant treatment of the plaintiff's absenteeism fourteen months prior to said suspension could, if proven, allow a reasonable jury to conclude that LeTourneau's legitimate, nondiscriminatory reason is pretextual.  Accordingly, the Court finds that LeTourneau is not entitled to summary judgment on this *quid pro quo* claim.[11, 12]

4. Hostile Work Environment

Turning to the allegations which were insufficient to support

_____

[11] As stated before, under the <u>Casiano</u> road map, LeTourneau may not raise the <u>Faragher/Ellerth</u> affirmative defense to the plaintiff's *quid pro quo* claims.

[12] A word of caution is in order.  The Court has generously assumed that the breast comments occurred on April 30, 2006 (and there is a genuine issue as to whether they occurred after February 2006 at all).  Should the plaintiff be unable to prove by a preponderance that these comments (or other acts of harassment) were made within approximately four months of either her suspension or termination, then (absent some other evidence demonstrating a causal nexus between her acceptance/rejection of such harassing conduct and her suspension or termination) the Court will be inclined to favorably consider judgment as a matter of law for LeTourneau on the *quid pro quo* claims.

a finding of an actionable tangible employment action,[13] the Court again concludes that plaintiff has come forward with sufficient proof that she was a member of a protected class and was exposed to unwelcome sexual harassment because of her sex.  The next question is whether "[i]f proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment?"  Casiano v. AT&T Corp., 213 F.3d 278, 284 (5th Cir. 2000).  "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive."  EEOC v. WC&M Enters., Inc. 496 F.3d 393, 399 (5th Cir. 2007).  "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."  Id.

It has been demonstrated that the plaintiff subjectively perceived Collins's actions to be offensive.  Upon consideration of

---

[13] These allegations are the welding tip comments, comments about panties on the doorknob, and Collins's touching of McKenzie during periods of instruction.  Again, the Court is proceeding under the unopposed assertion of the plaintiff that she may rely upon these events which are outside of the 180-day time period in support of her hostile work environment claim because they are so sufficiently connected to an act of harassment within the 180-day period (breast comments) that they constitute a continuing violation.

the above factors in light of the entire record, the Court is of the opinion that the conduct about which McKenzie complains (including Collins's comments about welding tips and panties on a doorknob, as well as his touching of McKenzie during periods of instruction) could be offensive to a reasonable person.  Therefore, the Court concludes that the plaintiff has created a genuine issue as to whether Collins's conduct was severe or pervasive harassment.

LeTourneau can nevertheless avoid liability under the Faragher/Ellerth affirmative defense if it "prove[s] by a preponderance of the evidence '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div., 512 F.3d 157, 164 (5th Cir. 2007) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998)).

There is no doubt that at all relevant times LeTourneau had in place a sexual harassment policy which defined sexual harassment, indicated that sexual harassment would not be tolerated by the company, told employees what to do if they believed they were being sexually harassed, and stated that alleged violations would be followed with a confidential, prompt, and thorough evaluation and

appropriate corrective action if warranted.  (LeTourneau Employee Policy Guide 24.)  McKenzie testified that she received a copy of LeTourneau's sexual harassment policy and understood that she was to report any sexual harassment to human resources.  (McKenzie Depo. 43.)  The plaintiff also declared that LeTourneau personnel instructed her on the sexual harassment policy when she was hired. (McKenzie Depo. 51.)  The Court is therefore of the opinion that LeTourneau had in place a reasonable policy for preventing and reporting sexual harassment during the period of time in which McKenzie claims she was being harassed by Collins.

However, a genuine issue of material fact does exist as to whether LeTourneau acted with reasonable promptness to correct Collins's harassment of the plaintiff.  The parties agree that McKenzie reported Collins's acts of sexual harassment on May 11, 2006, (Pl.'s Mem. 3.;  Defs.' Mem. 3; Clay Masters Aff. ¶ 4); however, the parties do not agree upon the content of the conversation.  According to the plaintiff, she reported[14] that Collins was sexually harassing both her and Bobbie Vessel to Mike Gray, a vice-president at LeTourneau.  (McKenzie Depo. 138.) According to LeTourneau, McKenzie only reported that Collins was

---

[14] McKenzie also testified that she told Clay Masters that "you need to come in there and start standing back and watching in there and see what's going on." (McKenzie Depo. 118.)  The parties agree that the plaintiff made this statement a only few days before May 11, 2006.  (Pl.'s Mem. 3; Masters Depo. 99-100.)  Masters declared that he did not accede to McKenzie's request due to its vagueness. (Master Depo. 91.)

sexually harassing Bobbie Vessel.   (Clay Masters Aff. ¶¶ 4, 7.)
LeTourneau admits that no interview notes were generated when
McKenzie made her report to Gray.   (Masters Depo. 96-97.)   The
parties agree that no investigation of the allegations of Collins's
harassment of McKenzie began until sometime in September 2006
following her EEOC Charge.

Thus the answer to the question of whether LeTourneau's
corrective response to Collins's harassment of McKenzie was
reasonable depends upon whether she reported that she (in addition
to Bobbie Vessel) was being harassed.   Inasmuch as the latter
question is a genuine issue of material fact for the jury, the
former question (which is predicated on the latter) cannot be
answered by the Court at this time.   Accordingly, because genuine
issues of material fact preclude the Court from finding as a matter
of law that LeTourneau satisfied this element[15] of the
Faragher/Ellerth affirmative defense, summary judgment is not
warranted in its favor on the plaintiff's hostile work environment
claim.

    *B. The Plaintiff's Title VII Retaliation Claims*

Pursuant to 42 U.S.C. § 2000e-3(a), "[i]t shall be an unlawful

---

[15] Because a genuine issue exists as to LeTourneau's
satisfaction of the corrective prong of the first element of the
Faragher/Ellerth affirmative defense, the Court need not opine as
to whether McKenzie unreasonably failed to take advantage of the
preventive or corrective opportunities provided by LeTourneau or to
avoid harm otherwise.

employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." "To establish a prima facie case of unlawful retaliation under Title VII, [a plaintiff] must show (1) that he engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007).

There is no doubt that, if true, McKenzie's reporting of Collins's harassment of her to Gray on May 11, 2006, was an activity protected under Title VII. Lemaire v. Louisiana Dept. of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007); Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002).

An adverse employment action in the retaliation context is any action which "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (internal quotations and citations omitted). The Court concludes that a reasonable jury could find that McKenzie's May 22, 2006, suspension, assignment to spud can duty (assuming it was after May 11, 2006 — see supra note 1), and

23

termination each amount to an adverse employment action due to their potentially dissuasive natures.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1187 (5th Cir. 1997).   In this case, the passage of eleven days between the plaintiff's alleged complaint to Gray and her suspension by Collins would permit a reasonable jury to infer a causal nexus between the two events.   The same holds true for the spud can assignment, assuming this event occurred around the same time as the suspension.

The plaintiff's termination three and one-half months later is a closer question.   However, as noted earlier, (supra at 15), the Fifth Circuit has recognized that a time lapse of up to four months has been found to satisfy the causation element of a prima facie case for retaliation.   Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001); see also Richard v. Cingular Wireless LLC, 233 Fed. Appx. 334, 338 (5th Cir. 2007) (per curiam) (not selected for publication) (two and one-half month period sufficient); Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 995 (5th Cir. 2005) (less than sixty day period sufficient); Handzlik v. United States, 93 Fed. Appx. 15, 19 (5th Cir. 2004) (per curiam) (not selected for publication) (two months sufficient); but see Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 472 (5th Cir. 2002) (five month

24

period insufficient).  The Court therefore concludes that the passage of time in this case between the plaintiff's undertaking a protected activity and her termination is sufficient to permit an inference (albeit a weak one) of a causal relationship between the two events.  Accordingly, the Court finds that the plaintiff has presented a prima facie case for her retaliation claim.

LeTourneau advances the legitimate, nondiscriminatory reason of excessive absenteeism (specifically, the failure to report for work for more than three work days in a twelve-month period without advising LeTourneau of the reason for such absence) to account for McKenzie's termination.  As to the plaintiff's suspension, LeTourneau again proffers the reason of excessive absenteeism — — — this time absence from seventy-seven work hours in a rolling twelve-month period without excuse.  LeTourneau declares that the plaintiff was sent to work on the spud cans because she was one of two welders closest to the cans and could do the work without moving her machine.

"Once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007).  The plaintiff's evidence must allow a reasonable jury to conclude that the employer's justification is unworthy of credence. Mato v. Baldauf,

25

267 F.3d 444, 452 (5th Cir. 2001).

As to her termination, the plaintiff does not specifically advance any argument that LeTourneau's legitimate, nondiscriminatory reason was pretextual. However, for the same reasons the Court has held that a reasonable jury could find LeTourneau's proferred explanation for McKenzie's termination to be unworthy of credence and therefore pretextual in the *quid pro quo* harassment context, (*supra* at 16-17), the Court finds the same inference could be drawn in the retaliation context. Accordingly, the Court finds that LeTourneau is not entitled to summary judgment on this claim.

Regarding the May 22, 2006, suspension, McKenzie posits that the fact that she had previously received five warnings for absenteeism without being suspended is indicative of pretext. The Court agrees that this fact, if proven, could reasonably call into question LeTourneau's proferred explanation and could therefore permit a reasonable jury to discern that LeTourneau's legitimate, nondiscriminatory reason is pretextual.[16]   Summary judgment shall not follow for LeTourneau on this claim.

Lastly, as to the spud cans, the plaintiff has not offered any

---

[16] This is not to say that the sixth absence could not have justified LeTourneau's suspension or termination of the plaintiff, for employers may properly choose to follow unheeded warnings with more forceful consequences; rather, the Court merely concludes that a reasonable jury could draw an inference of pretext from LeTourneau's disparate response to the plaintiff's absenteeism.

evidence suggesting that LeTourneau's proferred explanation is pretextual. Therefore, LeTourneau is entitled to a judgment as a matter of law on this claim.

### C. The Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress

Under Mississippi law, the standard for an intentional infliction of emotional distress claim "is very high: the defendant's conduct must be 'wanton and wilful and such that it would evoke outrage or revulsion.'" Hatley v. Hilton Hotels Corp. 308 F.3d 473, 476 (5th Cir. 2002) (quoting Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648, 659 (Miss. 1995)). "To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove that the defendant's acts were so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Grice v. FedEx Ground Package Sys., Inc., 925 So. 2d 907, 912 (Miss. Ct. App. 2006) (quoting Croft v. Grand Casino Tunica, Inc., 910 So. 2d 66, 75 (Miss. Ct. App. 2005)); accord King v. Newton County Bd. of Supervisors, 144 Fed. Appx. 381, 385 (5th Cir. 2005) (per curiam) (not selected for publication).

In addition, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001). Indeed, "'[o]nly in the most unusual cases does the conduct move out of the realm of an ordinary

employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress.'" <u>Grice</u>, 925 So. 2d at 912 (quoting <u>Prunty v. Arkansas Freightways, Inc.</u>, 16 F.3d 649, 654 (5th Cir. 1994)). Rather, workplace-related claims for intentional infliction of emotional distress are generally "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." <u>Lee</u>, 797 So. 2d at 851. Inasmuch as McKenzie does allege a pattern of willful and pervasive sexual harassment by Collins for more than a year and one-half, the matter *sub judice* presents the uncommon case where a claim for intentional infliction of emotional distress in the employment context may be actionable.

However, the defendants assert that the applicable statute of limitations circumscribes the events upon which the plaintiff can base her claim. Under Mississippi law, a claim for intentional infliction of emotional distress is subject to a one-year statute of limitations. <u>Citifinancial Mortgage Co., Inc. v. Washington</u>, 967 So. 2d 16 (Miss. 2007). Therefore, so goes the argument, inasmuch as the plaintiff filed her Complaint on March 30, 2007, her claim for intentional infliction of emotional distress must have accrued on or after March 30, 2006 in order for it not to be time-barred.

A caveat to the applicability of statutes of limitation to tortious causes of action is the "continuing tort doctrine," which

provides that "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease." Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144, 148 (Miss. 1998). "A 'continuing tort' is one inflicted over a period of time; it involves a [sic] wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by a [sic] continual unlawful acts, not by continual ill effects from an original violation." Id. In other words, as the Fifth Circuit has noted in the intentional infliction of emotional distress context, "[u]nder Mississippi law, acts that take place outside the one-year statute of limitations are actionable if, and only if, they are directly connected to an ongoing pattern of tortious conduct and at least one tortious act occurred within the one-year limitations period." Bellum v. PCE Constructors, Inc., 407 F.3d 734, 741 (5th Cir. 2005).

As discussed earlier, the breast comments and McKenzie's suspension, spud can assignment, and termination allegedly occurred on or after March 30, 2006 and therefore within the statutory period. Standing alone these events may be insufficient to support a claim for intentional infliction of emotional distress; however, when considered conjointly with the welding tip and panties comments and the inappropriate touching allegations (all of which

29

presumably fall outside the one-year period), the Court is of the opinion that they could potentially satisfy the high threshold of extreme and outrageous conduct established by Mississippi law. Inasmuch as a fact issue exists as to whether the latter events were directly connected to the former ones and comprised an ongoing pattern of tortious conduct, the defendants will not receive a judgment as a matter of law on this claim.

*D. The Plaintiff's Remaining Claims*

The plaintiff concedes that the defendants are entitled to a judgment as a matter of law on her federal equal protection claim and her state law claims for invasion of privacy, negligent infliction of emotional distress, wrongful termination, and negligent hiring, supervision, and retention. Therefore, summary judgment shall follow for the defendants on said claims.

## IV. CONCLUSION

The Court has considered the remaining arguments of the parties and finds them to be without merit. Accordingly, based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendants' Motion for Summary Judgment [**docket entry no. 48**] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this the 9th day of July 2008.

s/ David Bramlette

**UNITED STATES DISTRICT JUDGE**
